UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

|  |  |
|---|---|
| IN RE: DARVOCET, DARVON AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) |
|  | Master File No. 2: 11-md-2226-DCR MDL Docket No. 2226 |
| *Knight v. Xanodyne Pharm., Inc., et al.,* *Del Favero v. Xanodyne Pharm., et al.,* *Blackwell v. Xanodyne Pharm., et al.,* | ) ) ) ) ) |
|  | Civil Action No. 2: 11-307-DCR Civil Action No. 2: 11-311-DCR Civil Action No. 2: 11-312-DCR |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR RECONSIDERATION**

This matter is pending for consideration of the plaintiffs' motion for reconsideration of final judgments appearing at MDL Record Nos. 1441, 1442, and 1445 and entered on March 8, 2012. [MDL Record No. 1583] In support of the motion, the plaintiffs assert that the judgments entered in each of these three cases should be set aside so that they may file amended complaints. They contend that discovery obtained since the transfer of the cases to this Court would support "more detailed allegations regarding their non-failure-to-warn claims." [MDL Record No. 1583-1, p. 2] The plaintiffs also seek to add various brand and generic manufacturers as defendants. Having considered the plaintiffs' motion, the Court will deny the relief sought.

**I.**

Plaintiff Paulette Knight filed suit against two defendants, Xanodyne Pharmaceuticals, Inc., and Brenn Distribution, Inc. (formerly known as Qualitest Pharmaceuticals, Inc.), in the United States District Court for the Southern District of Mississippi on October 3, 2011. [Civil Action No. 2: 11-307, Record No. 1]  The fourteen-page Complaint filed on that date contains allegations that Knight previously used either Darvocet or its generic equivalent to control pain associated with chronic shingles.  [*See id.* ¶¶ 13-14.]  She contends that she was prescribed Darvocet for approximately twenty-five years and that during the last five-year period, she purchased the generic equivalent of the drug.  [*Id.* ¶ 14]  Knight also alleges that in early 2011, she began developing symptoms caused by her ingestion of products containing propoxyphene.  [*Id.* ¶ 15]  Knight does not allege that the medication she ingested was manufactured by either of the two named defendants.  However, in paragraph 18 of her Complaint, she contended that "[o]n December 19, 2010, the Food and Drug Administration ('FDA') announced that Xanodyne had agreed to halt all U.S. Marketing of Darvon and Darvocet."  [*See id.* ¶ 18]  Following these allegations, Knight's Complaint outlined seven counts for relief based upon breach of express and implied warranty (Counts I and V); unreasonably dangerous design (Count II); unreasonably dangerous construction and composition (Count III); inadequate warning (Count IV); unjust enrichment (Count VI); and negligence (Count VII).

Plaintiff Marjorie Del Favero filed her Complaint in the United States District Court for the Eastern District of Louisiana on October 4, 2011.  [Civil Action No. 2: 11-311, Record No. 1]  Like Knight, Del Favero asserted seven state law claims against Defendants Xanodyne

Pharmaceuticals, Inc. and Brenn Distribution, Inc. (alleged to be "formerly known as Qualitest Pharmaceuticals, Inc."). [*Id.* ¶ 3] And while Plaintiff Del Favero asserted that she has used a drug "called Darvocet and/or its generic equivalent," she did not state who manufactured the product and did not allege that she took any product manufactured, sold, or distributed by the two named defendants. [*Id.* ¶ 13]

The third action that is the subject of the present motion, captioned *Rhonda Blackwell, individually and on behalf of her deceased husband, Arthur Holmes Blackwell, Jr., etc., v. Xanodyne Pharmaceuticals, Inc., et al.,* was also filed on October 4, 2010, in the United States District Court for the Eastern District of Louisiana. [Civil Action No. 2: 11-312, Record No. 1] The Complaint submitted on that date contained state law claims similar to those asserted in the companion cases filed by the plaintiffs' attorneys. Additionally, in Count V, the plaintiffs presented a claim for "Breach of Warranty of Redhibition." [*Id.*, p. 11] As noted by the defendants, this Complaint suffered from the same deficiencies as the companion cases in that the plaintiffs did not allege who manufactured the drug ingested by the decedent.

On November 15, 2011, a number of former manufacturers of generic products containing propoxyphene filed a joint motion to dismiss the claims asserted against them in thirty-three of the cases consolidated in this MDL proceeding. [MDL Record No. 383] In relevant part, these defendants argued that all claims asserted against them concerning the adequacy of a generic manufacturer's warnings, representations, and disclosures were preempted under federal law as construed by the Supreme Court in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011). On November 30, 2011, Defendant Xanodyne Pharmaceuticals, Inc. filed a separate

motion to dismiss, contending, *inter alia*, that the plaintiffs had not adequately identified the particular manufacturer of the drugs they allegedly took. Further, Xanodyne pointed out that the plaintiffs who are the subject of the present motion for reconsideration did not state that they actually took any formulation of the drug manufactured, sold, or distributed by Xanodyne. [*See* MDL Record No. 445, pp. 4-5, 8]

The plaintiffs jointly responded to the generic defendants' motion on December 9, 2011, and to the motion filed by Xanodyne on January 17, 2012. [MDL Record Nos. 568, 908] Additionally, the plaintiffs in Civil Action Nos. 2: 11-307-DCR, 2: 11-311-DCR, and 2: 11-312-DCR filed a separate, supplemental memorandum opposing the generic defendants' motion to dismiss on December 9, 2011. [MDL Record No. 574] In their supplemental memorandum, the plaintiffs indicated that they were in the process of "amending these complaints to include the PSC's master complaint allegations."[1] [*Id.*, p. 2] Briefing of the issues raised by Xanodyne and the generic defendants was completed on February 10, 2012. On February 27, 2012, the parties argued the merits of their respective positions.

On March 5 and 7, 2012, the Court resolved several motions to dismiss in three separate Memorandum Opinions and Orders. [*See* MDL Record Nos. 1274, 1305, and 1402] In the first opinion, the Court addressed Defendant Xanodyne's arguments that it could not be liable to plaintiffs who failed to establish that they ingested a product that it sold, manufactured, or

---

[1] On February 24, 2012, the plaintiffs in each of the three cases currently before the Court submitted motions for leave to file an amended complaint to assert claims against the following additional parties: Eli Lilly and Company; aaiPharma, Inc.; aaiPharma LLC; AAI Development Services, Inc.; NeoSan Pharmaceuticals Inc.; Qualitest Pharmaceuticals, Inc.; Propst Distribution, Inc.; and Teva Pharmaceuticals USA, Inc. [MDL Record Nos. 1111, 1113, 1114]

distributed. After considering the defendant's arguments as well as the plaintiffs' response and the product liability law from several states, the Court concluded that dismissal of the claims asserted against Xanodyne in thirty-five cases was appropriate. As indicated in this first opinion,

> [n]ot one of the plaintiffs in these cases has properly identified Xanodyne as the entity that marketed, sold, or manufactured the product he or she ingested. Instead, most actually allege that the plaintiff ingested a "generic form of Darvocet." . . . Several plaintiffs indicate that the product *might* have been sold by Xanodyne, but they plead themselves out of a claim by asserting that they ingested "Darvon, Darvocet and/or Propoxyphene." . . . Such allegations are insufficient to show that the plaintiff is entitled to relief because the "and/or" language permits the Court to infer the possibility that the plaintiff ingested only generic propoxyphene, and "it is this possibility that is fatal" to these complaints . . . . Other plaintiffs allege that they "cannot determine the Defendant and/or other entity that manufactured, marketed, distributed and/or tested the particular Propoxyphene Product that cause the Decedent's harm . . . . Finally, two of the plaintiffs allege the use of a brand name drug, but the allegations fail to sufficiently identify that product as the one marketed, sold, or manufactured by Xanodyne. In light of the requirement that, in order to hold a defendant liable, a plaintiff must prove the defendant was responsible for the allegedly defective product, these allegations do not "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Therefore, the product liability claims against Xanodyne in each of these cases fail as a matter of law.

[MDL Record No. 1274, pp. 6-7 (citations and references to the record omitted)][2]

In its second opinion, the Court addressed a joint motion to dismiss filed in thirty-four cases on behalf of several defendants alleged to be manufacturers and/or sellers of generic propoxyphene products. The generic defendants argued that the claims asserted against them should be dismissed because, under *Mensing*, the claims were completely preempted. In

---

[2] The Court addressed the plaintiffs' misrepresentation theory of liability at pages 8-14 of this initial opinion and concluded, in part, that a plaintiff must properly identify the entity responsible for the product at issue to proceed with such a claim. Further, the Court held that Xanodyne had no legal duty toward consumers of generic products containing propoxyphene. [*Id.*]

-5-

granting the generic defendants' motion, the Court rejected the plaintiffs' arguments that *Mensing* was not applicable because of the manner in which they characterized their claims. As explained in that opinion, "no matter how [the plaintiffs] frame their allegations, [they] cannot avoid *Mensing*'s effect." [MDL Record No. 1305, p. 4] Thus, the claims asserted against the generic defendants were dismissed with prejudice.

Finally, at page 22 of this opinion, the Court denied the plaintiffs' motions to amend filed in these three actions. The proposed Amended Complaints reflected the "form Complaint" developed by the Plaintiffs' Steering Committee after the parties in the initial cases were allowed to file amended complaints. [*See* MDL Record Nos. 1111-3, 1113-3, 1114-3.] However, in light of the opinions entered on March 5, 2012, the claims asserted in the proposed complaints were not viable. In other words, the form complaints could not withstand the motions to dismiss filed by the generic defendants and Xanodyne. Therefore, the amendment would have been futile, and the Court denied the plaintiffs' motions for leave to amend. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss.").

## II.

In their motion for reconsideration, the plaintiffs cite rules 59 and 60 of the Federal Rules of Civil Procedure in support of their argument that a court may, on a motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment. Citing *Ainkard v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007), they contend that reconsideration is appropriate in

at least three situations: (1) to accommodate an intervening change in the controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or prevent manifest injustice. [MDL Record No. 1583-1, p. 2] Here, the plaintiffs seek to rely upon the second situation based on the assertion that they have obtained "NDC information that matched Plaintiff's claims to various generic defendants not named in their original Complaint." [*Id.*, p. 3] And, with respect to one of the plaintiffs seeking reconsideration, they state that as far back as 1981, Plaintiff Knight "likely both ingested the products of brand name defendants and relied upon the representations of brand name defendants." [*Id.*] In support, they attach one page from Knight's unattested medical records which includes a reference to a possible prescription for a propoxyphene product dated December 12, 1981. [MDL Record No. 1583-2]

Having considered the motion and supporting materials, the Court concludes that reconsideration would not be appropriate. The plaintiffs in two of the three cases (Civil Action No. 2: 11-311-DCR and Civil Action No. 2: 11-312) have not offered *any* additional factual information for the Court's consideration. Thus, their motions turn on the desire to assert claims that the Court has already found to be insufficient to overcome a motion to dismiss.[3] Likewise, these plaintiffs have not demonstrated that the Court's original analysis concerning the claims the defendants now seek to add for a second time was erroneous. With respect to the third plaintiff (Paulette Knight), the proposed Amended Complaint tendered on February 24, 2012, does not identify a specific defendant that allegedly manufactured or distributed a product containing propoxyphene she claims to have ingested. Instead, at paragraph 1.3 of her proposed

---

[3] While the plaintiffs assert that their proposed Amended Complaints contain "non-failure-to-warn claims" that would not be subject to preemption under *Mensing*, that argument is misplaced.

-7-

Amended Complaint, Knight avers, "Plaintiff cannot determine the specific Defendant and/or other entity that manufactured, marketed, distributed and/or tested the particular Propoxyphene Product that caused Plaintiff's harm." [MDL Record No. 1114-3 ¶ 1.3] And the plaintiffs' motion for reconsideration does not provide any further identifying information.

### III.

In summary, it appears that the plaintiffs are simply seeking leave to assert claims that the Court has already found to be insufficient. Setting aside final judgments for the purpose of allowing the plaintiffs to amend their complaints only to have the additional claims dismissed would be futile and unwarranted. Accordingly, it is hereby

**ORDERED** that the plaintiffs' Motion for Reconsideration of Judgment filed in Civil Action No. 2: 11-307-DCR, Civil Action No. 2: 11-311-DCR, and Civil Action No. 2: 11-312-DCR [MDL Record No. 1583] is **DENIED**.

This 5th day of April, 2012.



Signed By:
*Danny C. Reeves* DCR
United States District Judge